IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
JAN 16 2015
PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| JAMES E. HARMON, | : | |
| Petitioner | : | |
| v. | : | 3:14-CV-00724 |
| LAWRENCE MAHALLY, et al., | : | (Judge Nealon) |
| Respondents | : | |

## MEMORANDUM

Petitioner James E. Harmon has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a conviction by the Court of Common Pleas for Franklin County, Pennsylvania. (Doc. 1). For the reasons set forth below, the petition will be dismissed as untimely.

I.   **Background**

On August 29, 1979, Harmon was sentenced to life imprisonment for a conviction of murder in the second degree, and a consecutive sentence of five (5) to twenty (20) years for a conviction of robbery arising out of the same incident. (Doc. 9, Ex. 2). This conviction and sentence was affirmed by the Pennsylvania Superior Court and by the Pennsylvania Supreme Court. Id. On December 24, 1985, Harmon properly filed a petition for writ of habeas corpus before this Court. Harmon v. Ryan, 657 F. Supp. 623, 624 (M.D. Pa. 1986). That petition was addressed on its merits, and all claims were denied, except for a single allegation

of a double jeopardy violation relating to Harmon's consecutive sentence for robbery. Id. at 624-27. This Court found that the consecutive sentences constituted double jeopardy, and declared Harmon's robbery sentence null and void. Harmon v. Ryan, 3:85-cv-1863, pp. 6-7 (M.D. Pa. Oct. 14, 1986). However, the conviction and life sentence for second degree murder was not altered. Id.

On August 3, 1989, Harmon filed a second petition for writ of habeas corpus before this Court, which was dismissed on procedural grounds. (Doc. 9, Attachment 2). On January 7, 1997, Harmon filed a Post Conviction Relief Act ("PCRA") petition. (Doc. 9). On April 20, 1998, the PCRA petition was dismissed by the Court of Common Pleas, and on July 22, 1999, the Pennsylvania Superior Court affirmed the dismissal. Id.

In April 1997, after filing the PCRA petition but before the PCRA Court issued a decision, Harmon filed a third petition for writ of habeas corpus in this Court. Harmon v. Larkins, et al., 3:97-cv-621 (M.D. Pa. filed April 21, 1997). That petition was dismissed in June 1997. Id.

On September 30, 2010, Harmon filed another PCRA petition. Id. The Court of Common Pleas dismissed the petition on September 18, 2012, finding that "the issues raised therein are patently frivolous and without support in the record[.]" Id. On June 27, 2013, the Pennsylvania Superior Court dismissed Harmon's appeal. Id.

He filed a fourth petition for writ of habeas corpus on April 15, 2014, which is the subject of this opinion. (Doc. 1). Harmon argues, inter alia, that he received ineffective assistance of counsel and the original verdict was not supported by the evidence of record. Id. On May 8, 2014, Respondents filed a motion to dismiss arguing that this Court lacks jurisdiction because this constitutes a successive petition. (Doc. 9). In the alternative, Respondents argue that the petition is time-barred. Id. Harmon filed a traverse on May 20, 2014, rendering this matter ripe for disposition. (Doc. 12).

## II. Discussion

### A. Petition is Statutorily Time-Barred

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. § 2254 must adhere to the statute of limitations provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides:

> (d)(1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant

> was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right had been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2). Consequently, the one year statute of limitations for filing a habeas corpus petition begins to run when direct review processes are concluded. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

Section 2244(d)(2) tolls the statute of limitations only for the time during which a "properly filed application" for post conviction relief is pending in state court. A "properly filed application" for post conviction relief under § 2244(d)(2) is one submitted according to the state's procedural requirements, such as rules governing time and place of filing. Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). An application is "pending" during the time during in which a petitioner

may seek discretionary state court review, whether or not such review is sought. Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000).

Harmon was convicted of Robbery and Murder in the Second Degree on February 7, 1979; he was sentenced on August 29, 1979. Harmon's judgment of sentence became final on June 4, 1981 when the Pennsylvania Supreme Court affirmed the conviction. (Doc. 9, Ex. 1). However, because his conviction became final before the effective date of the AEDPA, Harmon had until April 24, 1997, one year from the enactment of the AEDPA, to file a habeas corpus petition. See Burns v. Morton, 134 F.3d 109, 111-12 (3d Cir. 1998) (explaining that "Section 2244(d) became effective on April 24, 1996, when the Antiterrorism and Effective Death Penalty Act of 1996 was signed into law").

Harmon filed a PCRA petition on January 7, 1997, two hundred fifty-eight (258) days after the AEDPA was signed into law. At that point, the statute of limitations was tolled pursuant to Section 2244(d)(2). The Court of Common Pleas dismissed the PCRA petition, and on July 22, 1999, the Superior Court affirmed. Harmon did not appeal to the Pennsylvania Supreme Court within thirty (30) days as required under the Pennsylvania Rules of Appellate Procedure, Rule 903(c)(3). Therefore, the statute of limitations began to run again on August 21, 1999. One hundred seven (107) days later, on December 6, 1999, the statute of limitations expired without Harmon having filed a petition for writ of habeas corpus.

Consequently this habeas petition, filed April 15, 2014, is barred by the statute of limitations unless subject to statutory or equitable tolling.

### B. Tolling Procedures

The AEDPA's one-year statute of limitations is subject to both statutory and equitable tolling. Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003), cert. denied, 540 U.S. 921 (2003); 28 U.S.C. §2244(d). Therefore, the Court must examine Harmon's petition to determine if principles of statutory or equitable tolling would result in his petition being timely filed.

#### 1. Statutory Tolling

Here, statutory tolling does not operate to extend the statute of limitations pursuant to 28 U.S.C. § 2244(d)(1). Giving liberal reading to Harmon's petition and accompanying memoranda, it appears that he argues that three statutory exceptions to the statute of limitations are present: (1) an impediment prevented him from filing a timely petition; (2) a new constitutional right of retroactive applicability was recognized by the United States Supreme Court and; (3) there exists newly discovered evidence. (Docs. 1, 12, 22).

*a. Impediment to Filing a State Action*

Harmon first argues that the District Court committed "government interference" in his 1985 habeas petition. (Doc. 1). In that vein, Harmon argues that this Court interfered with his ability to file another state court action when it

6

(1) "contacted the trial Judge from the Court of Common Pleas" in an "off-the-record [interview] and never afforded [Harmon] the opportunity to timely object" and (2) "improper[ly] obstruct[ed] . . . [Harmon's] right to appeal" by declaring his conviction for robbery null and void during the first habeas petition. Id. Harmon's claims fail for two reasons.

First, Harmon has failed to show how either action interfered with his ability to file a proper habeas petition. Neither alleged action prevented him from filing a petition for collateral relief in state court, nor could have possibly prevented him from filing another habeas petition in federal court. Indeed, Harmon filed this habeas petition as well as two (2) prior habeas petitions without impediment. Second, Section 2244(d)(1)(B) only applies where state action has prevented the timely filing of a habeas petition. Here, Harmon has made no allegation that state action prevented the timely filing of this habeas petition, but has instead argued that federal action prevented the filing of a habeas petition. Therefore, Section 2244(d)(1)(B) does not render the petition timely.

b. *New Constitutional Rule of Retroactive Applicability*

Harmon also appears to argue that his petition was timely filed due to a constitutional right that was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. (Doc. 22). Specifically, Harmon states that in Magwood v. Patterson, 561 U.S. 320 (2010), the United

"States Supreme Court . . . held that petitionerr's [sic] fair-warning claim could be raised in the [sic] habeas corpus petition." (Doc. 22).

Magwood did not create a new constitutional right of retroactive applicability relating to a fair-warning claim. Rather, the United States Supreme Court held that, where the petitioner is resentenced pursuant to an earlier habeas petition, a later habeas petition challenging that new sentence does not qualify as a "second or successive" petition under 28 U.S.C. § 2244. Magwood, 561 U.S. at 342. The Court made no pronouncements relating to fair-warning claims and the ability to raise such claims in a habeas petition. To the contrary, the Supreme Court has long recognized that fair-warning claims under the Due Process Clause are cognizable in habeas petitions. E.g., Bouie v. City of Columbia, 378 U.S. 347, 350-51 (1964). Consequently, there has not been new recognition of a constitutional right as required by Section 2244(d)(1)(C).

    c. *Newly Discovered Evidence*

Lastly, Harmon points to the existence of evidence that was discovered after his trial concluded. (Doc. 1). However, Harmon has failed to make any showing that the factual predicate of his claims was not discoverable through the exercise of due diligence long ago. 28 U.S.C. § 2244(d)(1)(D). In fact, he raised the issue of after discovered evidence with this Court in his original habeas petition in 1985. See Harmon, 657 F.Supp. at 624-25. Thus, this evidence cannot toll the statute of

limitations. Furthermore, Harmon has failed to demonstrate how this evidence is relevant to his case, or how the evidence would have impacted the trial. As a result, this exception to the statute of limitations is likewise not applicable, and statutory tolling provides no relief.

### 2. Equitable Tolling

The AEDPA's statute of limitations may be tolled "when the principles of equity would make the rigid application of a limitation period unfair." Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006) (quoting Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003)) (internal quotation marks omitted). See also, Holland v. Florida, 560 U.S. 631, 645 (2010).

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v DiGuglielmo, 544 U.S. 408, 418 (2005)). The Third Circuit Court of Appeals has identified three circumstances in which equitable tolling is warranted: (1) the respondents "actively misled" the petitioner, (2) the petitioner was "in some extraordinary way" prevented from asserting his or her rights, or (3) the petitioner has mistakenly, but timely, asserted his or her rights in an incorrect forum. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (quoting Jones v. Morton, 195 F.3d 153,

159 (3d Cir. 1999)). The petitioner bears the burden of demonstrating that equitable tolling is warranted. Pace, 544 U.S. at 418.

The Third Circuit Court of Appeals has cautioned that "a court should be sparing in its use of" equitable tolling. Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013). Furthermore, equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998). There are no bright lines in determining when equitable tolling is warranted, and courts should "favor flexibility over adherence to mechanical rules." Ross, 712 F.3d at 799 (citing Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011); Holland v. Florida, 130 S.Ct. 2549, 2563 (2010)).

The principles of equitable tolling are not applicable to Harmon's petition. First, he does not allege that he has been actively misled by Respondents, and the record reflects no basis for the argument. See (Docs. 1, 12, 22). Second, there is no evidence that Harmon was prevented in any extraordinary manner from exercising his rights. Id. Although he alleges government interference, as previously noted, he has not demonstrated how any government action interfered with his ability to file a habeas petition. Finally, he has never asserted his rights in the wrong forum. Id.

Between 1999 when his fourth PCRA petition was dismissed and 2010 when his fifth PCRA petition was filed, Harmon was not diligently pursuing his rights, and no extraordinary circumstances appear to have stood in the way of filing in a timely manner. Holland, 560 U.S. at 649. Additionally, he waited another ten (10) months after the Pennsylvania Superior Court dismissed the appeal of the denial of his 2010 PCRA petition before initiating this action. The record is devoid of any indication that equitable tolling is warranted, and therefore the petition is barred by the statute of limitations unless Harmon can establish that an equitable exception applies.

### C.   Equitable Exception

Lastly, Harmon argues that his conviction constitutes a "[m]iscarriage of justice that resulted in an innocent man being convicted of a crime for which he did not commit." (Doc. 22). Harmon appears to base this argument on the premise that: (1) the evidence was insufficient to support a conviction, and (2) he was found not guilty of theft. (Doc. 1). To the second point, Harmon argues that because he was found not guilty of theft, he could not have been found guilty of robbery. Id. Because he could not be found guilty of robbery, he could not have committed felony murder. Id.

An equitable exception to the AEDPA's statute of limitations exists where a petitioner demonstrates, in his or her first habeas petition, that a "miscarriage of

11

justice" has occurred. McQuiggin v. Perkins, 133 S.Ct. 1924, 1934 (2013). An equitable exception does not extend a statute of limitations, but will instead "override the statute of limitations when actual innocence is shown." Id. at 1931 (citing Rivas v. Fischer, 687 F.3d 514, 547, n. 42 (2d Cir. 2012)).

To establish that a "miscarriage of justice" has occurred, the petitioner must show that a constitutional error occurred and, absent this error, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). The Supreme Court has emphasized that such a claim must be supported by "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

As to Harmon's second point, his interpretation of Pennsylvania law does not withstand scrutiny. At the time of his trial and conviction in early 1979, Pennsylvania law provided that an individual was guilty of robbery "if, in the course of committing theft, he [or she]: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate bodily injury; [or] (iii) commits or threatens immediately to commit any felony in the first or second degree." Com. v. Jackson, 271 Pa. Super. 131, 136 (1979)

(quoting 18 Pa.C.S. §3701(a)(1)). Furthermore, an act was "deemed 'in the course of committing a theft' if it occur[red] in an attempt to commit theft or in flight after the attempt or commission." Com. v. Rice, 477 Pa. 221, 225 (1978) (quoting 18 Pa.C.S. §3701(a)(2)).

This language emphasizes that theft itself is not required to support a conviction for robbery. Rather, all that is needed is attempted theft. Id. at 225. Thus, it is not necessarily inconsistent for a jury to conclude that an individual has not committed theft, but has committed robbery. Thus, Harmon's argument regarding theft and a legal inability to commit robbery must fail.

As to his first point, Harmon has not pointed to any new evidence that would sustain a conclusion that he did not attempt theft or commit robbery or murder. Harmon points to a single piece of new evidence, one witness, in support of his claim of actual innocence. (Doc. 1). This Court previously addressed this claim and adopted the trial court's conclusion that the new witness was "not material" to the case. Harmon, 657 F. Supp. at 625. Thus, this evidence does not demonstrate actual innocence. All other evidence cited to by Harmon in his habeas petition and supporting briefs existed at the time of trial, and therefore cannot form the basis of an equitable exception to the AEDPA's statute of limitations. Schlup, 513 U.S. at 324, 327. Consequently, no exception or exclusion to the statute of limitations exists, and the petition has been filed in an untimely manner.

### III. Certificate of Appealability

When a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability should be issued if "jurists of reason" would find that: (1) it is debatable whether the petition states a valid claim for the denial of a constitutional right, and (2) it is debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, Harmon clearly filed his habeas petition after the statute of limitations expired. He has failed to produce sufficient evidence to demonstrate that statutory or equitable tolling is warranted, and has not produced new evidence to support the assertion that an equitable exception to the statute of limitations exists. As a result, a certificate of appealability will not be issued.

### IV. Conclusion

A review of the record reveals that Harmon has not filed his petition for a writ of habeas corpus in a timely manner, and his petition will therefore be dismissed. An appropriate order will be issued.

Dated: January 15, 2015                              United States District Judge